UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HERSEY, )  | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. NO. 09-CV-11642 RGS |
| ) | |
| JOSEPH STIGLIANI, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)**

**Preliminary Statement**

This case is about trees, and nothing more. In particular, plaintiff takes issue with certain

arboreal maintenance decisions made by the Town of Hingham in 2006-2007.[1]  Indeed, the

Complaint is almost entirely focused on plaintiff's dissatisfaction with the Town's alleged failure

to remove certain damaged trees. In this Court, plaintiff is attempting to covert a garden variety

dispute over the proper maintenance of trees into a "civil rights" action.  In any event, as

discussed further below, plaintiff's Complaint should be dismissed on the grounds that (i) it fails

to comply with the pleading requirements of Rule 8 as articulated by the Supreme Court in *Bell*

*Atlantic Corp. v. Twombly*; (ii) plaintiff has failed to set forth the elements of a "class of one"

Equal Protection claim; and (iii) plaintiff has failed to allege that the defendant engaged in any

conduct that violated his First Amendment rights.  Accordingly, the lone defendant, Joseph

Stigliani, moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

---

[1] In his "Introduction" to his Verified Complaint, plaintiff states "[t]his case is brought by a Hingham resident who
expressed his concerns about the practices of his community's Department of Public Works, in particular its arboreal
maintenance." *Complaint*, at "Introduction."

**Statement of Facts**[2]

Plaintiff John Hersey is a resident of Hingham, Massachusetts. *Complaint*, ¶1. Plaintiff is also the owner of property located at 109A Hersey Street in Hingham. *Id.*, ¶10, at **Pltf's Ex. A**. Defendant Joseph Stigliani is also a resident of Hingham, Massachusetts. *Id.*, at ¶2. Mr. Stigliani previously held the position of Superintendent of Public Works for the Town of Hingham. *Id.* From December 2006 through April 2007, plaintiff, who described himself as having an active interest in the care and removal of trees located on Town property, had "notified municipal officials of safety hazards presented by damaged trees." *Complaint*, at ¶¶3-9.

On June 7, 2007, plaintiff received a letter from the Town's Building Commissioner, Richard Morgan, concerning the plaintiff's property located at 109A Hersey Street in Hingham. *Id.*, ¶10, at **Pltf's Ex. A**. Building Commissioner Morgan had previously sent plaintiff a letter on November 27, 2006, concerning the same issue. *Id.* Plaintiff had responded to Mr. Morgan's original letter on November 30, 2006, informing Mr. Morgan that the barn at issue would be fixed. *Id.* At all relevant times, plaintiff had leased the Hersey Street property to the Town. *Id.*, ¶11. Pursuant to the terms of the lease, the Town was responsible for maintaining the premises in good condition and undertaking necessary capital improvements. *Complaint*, ¶11, at **Pltf's Ex. B**.

On the same day, Mr. Stigliani sent a separate letter to the plaintiff informing him that he had received complaints that plaintiff had been disruptive and distracting to Department of Public Work's employees assigned to the Town's Recycling and Transfer Station. *Complaint*,

---

[2] For purposes of his Motion for Judgment on the Pleadings only, the defendant understands that this Court is required to accept the veracity of plaintiff's "well-pleaded" allegations. Given the extremely terse nature of the Complaint, defendant's factual recitation includes matters alluded to and contained in exhibits attached to the Complaint itself. This Court can consider these exhibits without converting this Motion into a motion for summary judgment, especially where defendants refer attachments to the Complaint, which are all public records. *Parker v. Hurley*, 514 F.3d 87, 90 n.1 (1st Cir. 2008).

¶12, at **Pltf's Ex. C**.  Mr. Stigliani wrote that he received complaints that Mr. Hersey had

interfered with the operation of the facility.  *Id.*  Mr. Stigliani warned Mr. Hersey that he would

be forced to revoke Mr. Hersey's privileges to use the Transfer Station if Mr. Hersey continued

to be disruptive to the operation of the facility with his tirades and complaints.  *Id.*

On June 21, 2007, Mr. Stigliani wrote to plaintiff informing him that he had been advised

that Mr. Hersey "nailed a sign to a public shade tree."  *Complaint*, ¶13, at **Pltf's Ex. D**.  Mr.

Stigliani informed Mr. Hersey that M.G.L. ch. 87, *et seq.* (commonly known as "The Public

Shade Tree Act") prohibit nailing signs to public shade trees.  *Id.*[3]  Mr. Stigliani ordered Mr.

Hersey to cease and desist from placing such signs on other public shade trees. Mr. Stigliani did

not attempt to levy any fine on Mr. Hersey.  *Id.*

## <u>Argument</u>[4]

## I.    Standard of Review

The standard for evaluating a motion for judgment on the pleadings under Fed. R. Civ. P.

12(c) is essentially the same as that for deciding a Rule 12(b)(6) motion. *Pasdon v. City of*

---

[3]  M.G.L. ch. 87, § 9, states, in part, "[w]hoever affixes to a tree in a public way or place a notice, sign, advertisement or other thing, whether in writing or otherwise, or cuts, paints or marks such tree, except for the purpose of protecting it or the public and under a written permit from the officer having the charge of such trees in a city or from the tree warden in a town, or from the department in the case of a state highway, shall be punished by a fine of not more than fifty dollars."  Of course, to the extent plaintiff contends the defendant misapplied this statute, such a claim cannot support a Section 1983 action. *See Baker v. McCollan*, 443 U.S. 137 (1979).

[4]  Count I of the Complaint is brought under the Massachusetts Civil Rights Act.  The MCRA provides a remedy to a person whose rights under the Constitution or laws of the United States or the Commonwealth have been interfered with by threats, intimidation or coercion," *Flesner v. Tech. Comm. Corp.*, 410 Mass. 805, 818 (1991).  Should this Court dismiss Mr. Hersey's Equal Protection and First Amendment claims, Mr. Hersey no longer has any "rights under the Constitution or laws of the United States of the Commonwealth" upon which he can maintain a MCRA claim.  In this regard, the Supreme Court has made clear that Section 1983 only protects "rights" secured by the U.S. Constitution; Section 1983 does not provide a remedy for a violation of all federal "laws."  *See, e.g., Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).  The same limitation holds true for claims brought under MCRA. *Perkins v. Commonwealth*, 52 Mass.App.Ct. 175, 181-182 (2001); *Batchelder v. Allied Stores Corp.*, 393 Mass. 819 (1985) (In enacting the Mass. Civil Rights Act, the Legislature provided a remedy "coextensive" with Section 1983). In sum, Mr. Hersey cannot maintain a MCRA claim because the only two constitutional "rights" he relied on to maintain his Section 1983 claim, should be found by this Court to be insufficient as a matter of law.  Alternatively, the defendant would ask the Court to decline to exercise supplemental jurisdiction over the remaining state law claims. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

*Peabody*, 417 F.3d 225, 226 (1st Cir. 2005). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Talentburst, Inc. v. Collabera, Inc.*, 567 F.Supp.2d 261, 269 (D. Mass. 2008).  Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*, citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at pp. 235-236 (3d ed. 2004); *Arivella v. Lucent Technologies, Inc.*, 2009 WL 1635737, *4 (D. Mass. 2009).  Fed. R. Civ. P. 8(a) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief" and "does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atlantic*, 550 U.S. at 556, n.3, citing 5 Wright & Miller, § 1202, at pp. 94-95.  The Rule 8(a) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic*, 550 U.S. at 555; *Bouvier v. Massachusetts*, 2009 WL 2232591, *4 (D. Mass. 2009); *Conley v. Massachusetts*, 2009 WL 2096207, 4, n.5 (D. Mass. 2009).  A plaintiff's claim to relief must be plausible on its face. *Bell Atlantic*, 550 U.S. at 570.

A facially plausible claim is one that sets forth alleged factual content – as distinguished from legal conclusions – that, if true, would allow the court to draw the reasonable inference that the defendant may is liable for misconduct. *Iqbal*, 129 S. Ct. at 1949.  Determining plausibility "requires the reviewing court to draw on its judicial experience and common sense." *Id.* Moreover, the requirement that a court must accept as true all of the allegations set forth in a plaintiff's Complaint does not apply to legal conclusions. *Id.*  "[A] sheer possibility that a defendant has acted unlawfully" is insufficient to withstand dismissal. *Id.*

**II.     Plaintiff's Complaint Fails to Meet the Minimum Pleading Requirements of Fed. R. Civ. P. 8.**

The crux of plaintiff's Complaint is Mr. Stigliani responded to plaintiff's criticism of his maintenance of public shade trees by (1) attempting to charge him with building code violations; (2) informing him that he would revoke his privileges at the Town's Transfer Station; and (3) informing him that his nailing signs to public shade trees was a violation of state law. *Complaint*, ¶¶10, 12-13. Of course, as noted above, it was the Building Commissioner, not Mr. Stigliani, who sent plaintiff the letters concerning the maintenance of his property.  The Complaint provides no facts to show why the issuance of any of these letters was "wrongful."  Assuming *arguendo* that Mr. Stigliani harbors some "ill-motive" toward Mr. Hersey, the June 7, 2007 letter concerning potential code violations was not issued by Mr. Stigliani, but, instead, by the Town's Building Inspector on behalf of the Building Department.  Regardless, plaintiff's few unadorned allegations come nowhere close to meeting the pleading standards enunciated by the Supreme Court in *Twombly* and *Iqbal*.  In *Twombly*, the Supreme Court dismissed the case for failure to state a claim "because plaintiffs here have not nudged their claims across the line from conceivable to plausible." *Bell Atlantic*, 550 U.S. at 570.  In language particularly relevant here, Justice Souter argued that courts should stop from coercing defendants into settling actions "to avoid the enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Id.*, at 559.  Picking up on this theme in *Iqbal*, the Supreme Court again rejected the plaintiff's claims – and thereby dismissed plaintiff's action – not because the allegations "are unrealistic or nonsensical," but because the "conclusory nature" of the plaintiff's allegations "disentitles them to the presumption of truth."  *Iqbal*, 129 S. Ct. at 1950.  By any objective measure, the allegations in the *Bell Atlantic* and *Iqbal* cases were

far more detailed than those alleged here.  Accordingly, like the complaints in *Bell Atlantic* and

*Iqbal*, Mr. Hersey's Complaint should be dismissed got failure to comply with the pleading

requirements of Rule 8(a).[5]

**III.   Plaintiff's Failed to State a Valid Section 1983 Claim.**

      A.    <u>Plaintiff's Failed to Allege Facts Sufficient to Maintain an Equal
Protection Claim Under Section 1983.</u>

Generally, the Fourteenth Amendment's Equal Protection clause guarantees equal

treatment, not equal results.  *Personnel Admr. of Massachusetts v. Feeney*, 442 U.S. 256 (1979).

Because Mr. Hersey is not a member of a protected class, the defendant will assume that his

nascent equal protection claim is premised upon the line of cases which recognizes that similarly

situated persons are to receive substantially similar treatment from their government.  *See*, *e.g.,*

*Tapalian v. Tusino*, 377 F.3d 1 (1st Cir. 2004) and citing cases.  To succeed, Mr. Hersey must

allege and ultimately adduce evidence from which a reasonable jury could conclude that,

"compared with others similarly situated, [he] was selectively treated . . . based on impermissible

considerations such as race . . . or malicious or bad faith intent to injure a person." *Id.* at 5

(citation omitted).  However, Mr. Hersey must establish more than that the defendant's actions

were simply arbitrary or erroneous; instead he must establish that their actions constituted a

"gross abuse of power."  *Id.* at 6; *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 566

(2000) (Breyer, J., concurring) (noting that certain other factors such as "vindictive action,"

"illegitimate animus," or "ill will" may raise violations of state law into a viable equal protection

claim).  Stated differently,  to prevail on a "class of one" discrimination claim under

*Willowbrook*, a plaintiff must prove that the defendants (i) intentionally treated him differently

(ii) from others similarly situated and (iii) that such treatment was based on impermissible

---

[5]   Fed. R. Civ. P. 8(a)(2) states that, in order to state a claim for relief, a pleading must contain "a short and plaint
statement of the claim showing that the pleader is entitled to relief . . .."

considerations such as race or religion, intent to inhibit the exercise of constitutional rights or malicious intent to injure a person. *Walsh v. Town of Lakeville*, 431 F.Supp. 2d 134 (D. Mass. 2006); *Pariseou v. City of Brockton*, 135 F.Supp. 2d 257 (D. Mass. 2001). With respect to the "malicious intent to injure" branch, the First Circuit has observed that such cases "are infrequent," and that the "malice/bad faith standard should be scrupulously met." *Rabinovitz v. Rogato*, 60 F.3d 906, 911 (1st Cir. 1995) (internal citations omitted). In *Rabinovitz*, a case where the plaintiffs relied on several specific acts – including the revocation of a previously issued zoning variance – involving a number of local officials all clearly intended to interfere with the plaintiff's property, the First Circuit found the plaintiffs' evidence – "though only barely enough evidence" – to withstand the defendants' summary judgment motion. *Rabinovitz*, 60 F.3d at 912. Here, by contrast, Mr. Hersey merely alleges that he was warned that if he continued with certain actions or inactions, that he would potentially be subject to a revocation of privileges (for his tirades) or a fine (for his violation of the Public Shade Tree Act). Of course, he was never subjected to any such action by the Town. The defendant submits that no equal protection claim can proceed on these reed bare facts. *See, e.g., Rectrix Aerodome Centers, Inc., v. Barnstable Mun. Airport Commission*, 632 F.Supp.2d 120, 130 (D. Mass. 2009).

The second reason this claim fails is because Mr. Hersey has not even alleged that there was a group with which he was "similarly situated." Mr. Hersey's failure to allege (i) that he was "similarly situated" to other town residents and (ii) that he was treated differently without justification, is fatal to his "class of one" equal protection claim. *See, e.g., Estate of Morris ex rel. v. Dapolito*, 297 F.Supp. 2d 680 (S.D.N.Y. 2004); *see also, Bell v. Duperrault*, 367 F.3d 703, 711-713 (7th Cir. 2004) (Ponsor, J., concurring) (noting that the "improper reasons" should be the "*only reasons* for the adverse action of which the plaintiff is complaining" to avoid the "ominous

potential [of] bursting the proper bounds of equal protection law. . .") (emphasis in original); *cf.*

*Engquist v. Oregon Dept. of Agriculture*, 128 S. Ct. 2146 (2009) (no class-of-one equal

protection claim in public employment setting); *Balboni v. Town of Plymouth*, 2009 WL

3754401, *3 (D. Mass. 2009) (no class-of-one equal protection claim in accordance with

*Engquist*); *McCann v. City of Lawrence*, 2009 WL 3182853, *6 (D. Mass. 2009).

      B.      <u>Plaintiff has Failed to State a Viable First Amendment Claim.</u>

      It is true that freedom of expression, especially expression of political views, "ranks near

the top of the hierarchy of constitutional rights." *Black Tea Society v. City of Boston*, 378 F.3d 8,

11-12 (1st Cir. 2004).[6]  However, like other rights secured by the Bill of Rights, it is not

absolute.  The constitutional standard by which the validity of a restriction on speech is tested

depends on two variables: the nature of the forum in which a restriction applies and the type of

restriction.  Without any constitutional issue, designated public fora such as the areas of a public

high school which have been traditionally open to the public, can be subject to reasonable time,

place, and manner regulations that are context-neutral. *Greenberg v. Woodward,* 2001 WL

1688902 (D. Mass. 2001) citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S.

37, 46 (1983) (rejecting First Amendment challenge to criminal trespass conviction).  Of course,

even speech in places considered a "traditional" public forum such as sidewalks and parks can be

subject to some restriction without running afoul of the First Amendment. *See McGuire v.*

*Reilly*, 386 F.3d 45 (1st Cir. 2004) (upholding Massachusetts statute which creates 18-foot buffer

zone around reproductive health care facilities).  Notably, "[p]roperty is not transformed into

---

[6] Of course, plaintiff's lawsuit does not concern "political" speech or speech promoting any *particular* point of view. Instead, what plaintiff is really arguing is that he has the unfettered right to verbally assault Town DPW employees, including Mr. Stigliani, at any place and at any time, without restriction.  Hence, assuming *arguendo* that the Town's Transfer Station constitutes a "traditional" or "limited" public forum, plaintiff still would not be entitled to approach employees screaming insults and profanities without interruption.  In fact, members of this Court have routinely upheld the constitutionality of Massachusetts' No Trespass Statute, M.G.L. ch. 266, §120. *See Wholey v. Tyrell*, 567 F.Supp.2d 279 (D. Mass. 2008).

"'public forum' property merely because the public is permitted to freely enter and leave the grounds at practically all times and the public is admitted to the building during specified hours." *United States v. Grace*, 461 U.S. 171, 178-79 (1983), citing *Greer v. Spock*, 424 U.S. 828 (1976) (public property does not become a "public forum" simply because the public can come and go at will).  The Town's Transfer Station, which is only open to Town resident's with appropriate permits – on limited days and at limited times – for the disposal of household waste, is certainly not a "traditional" public forum and likely not a "limited" public forum either.

The Supreme Court has regularly rejected the assertion that people who wish "to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Grace*, 461 U.S. at 178-79, quoting *Adderly v. Florida,* 385 U.S. 39, 47-48 (1966). Mr. Stigliani only raised concerns with plaintiff's disruptive tirades at the Town's Transfer Station to the extent such conduct was "disruptive to the operation of the Facility" and "distracting the Transfer Station employees."  Even thought Mr. Stigliani was not implementing a "regulation" as such, where property is not a traditional public forum and the government has not dedicated such property to First Amendment activity, such regulation is examined only for reasonableness. *Perry*, 460 U.S. at 46.  Whether such regulations are reasonable depends on "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972); *see also International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) (airport terminal operated by a public authority is a non-public forum, and thus ban on solicitation needed to only satisfy a reasonableness standard).

As the Supreme Court has held, despite the importance of the right to free speech, "the prophylaxis of the First Amendment is not without limits. Reasonable restrictions as to the time,

place, and manner of speech in public fora are permissible, provided that those restrictions 'are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  A regulation is narrowly tailored if "the means chosen are not substantially broader than necessary to achieve the government's interests." *Ward*, 491 U.S. at 800.  To satisfy this benchmark, a regulation need not be the least restrictive alternative available to the government.  *Id.* at 798-799.  Put another way, the validity of a time, place, or manner regulation is not subject to " 'a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted."  *Id.* at 800, quoting *United States v. Albertini,* 472 U.S. 675, 689 (1985).

Plaintiff's claim concerning his "right" to speak to town officials is wrong: he does not have the right to threaten or verbally assault DPW employees and officials under the guise of the First Amendment.  For that reason, Mr. Stigliani sent Mr. Hersey the June 7, 2007, letter asking him to refrain from interfering with the operation of the municipality's Transfer Station. Plaintiff does not enjoy the unfettered right to "interfere with, delay, or impede the normal and orderly conduct of government business" on government property. *United States v. Cassiagnol*, 420 F.2d. 868, 873 (4th Cir. 1970); s*ee also, e.g., United States v. Bader*, 698 F.2d 553 (1st Cir. 1983) (Breyer, J.) (defendants' convictions for participating in sit-ins at federal courthouse to protest draft registration, not barred by the First Amendment); *Hurley v. Hinckley*, 304 F.Supp. 704 (D. Mass. 1969), *aff'd sub mom Doyle v. O'Brien*, 396 U.S. 277 (1970) (per curiam) (rejecting plaintiff's First Amendment-based challenge to Massachusetts's no trespass statute);

*Commonwealth v. Wolf*, 34 Mass. App. Ct. 949, 951 (1993) (affirming defendant's conviction for trespass under M.G.L. c. 266, §130, and noting the words "without right" are not unconstitutionally vague); *United States v. Shiel*, 611 F.2d. 526, 528 (4th Cir. 1979) (protestor's refusal to obey reasonable orders to cease blocking traffic during protest was not protected by the First Amendment). Even potentially disruptive speech is not necessarily protected under the First Amendment. *See Connick v. Myers,* 461 U.S. 138 (1983) (disruptive speech is not protected where the government has legitimate interest in the proper functioning of its operations). Based on the June 7, 2007, letter, with which plaintiff takes issue, Mr. Stigliani made it clear that he only sought that Mr. Hersey refrain from "act[ing] in a way that will be disruptive to the operation of the Facility."[7] *See Complaint,* at Ex. C.

Mr. Hersey was not removed from the Transfer Station or even issued a "No Trespass" order, but instead, he was only warned to refrain from disruptive conduct in the future.   As to those matters of public concern upon which he wishes to speak, plaintiff can still solicit signatures for purposes of proposing a ballot initiative; hold signs wherever they are permitted by the Town Bylaws; appear on local cable television shows; or write to Town officials.   In addition, Mr. Hersey can and has attended meetings of the Board of Selectmen, for example, which meets in Town Hall. *Complaint*, at ¶¶4-5.

## IV.    Defendant is Entitled to Qualified Immunity.

Joseph Stigliani is entitled to qualified immunity even should this Court assume *arguendo* that Mr. Hersey can demonstrate an underlying civil rights violation.   Under federal law, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[7] Of course, plaintiff has not alleged that he was attempting to collect signatures for a petition or that he was engaging in the expression of a political viewpoint.

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." *Tatro v. Kervin,* 41 F.3d 9, 15 (1st Cir. 1994). The standard for judging a dispositive motion brought by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." *Febus-Rodriguez v. Betancourt-Lebron,* 14 F.3d 87, 91 (1st Cir. 1994). The focus should be not on the merits of the plaintiff's underlying claim, but instead on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. *Lowinger v. Broderick*, 50 F.3d 61, 65 (1st Cir. 1995).[8]

The First Circuit has constructed a qualified immunity framework that consists of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir.2004). Even focusing on just the third factor, defendant's conduct was objectively reasonable. First, the letters were written as a result of Mr. Hersey's conduct including, but not limited to, his "tirades" at the Town Transfer Station and nailing a sign to a public shade tree in violation of state law. Finally, the defendant's actions were not designed to stifle plaintiff's speech about the maintenance of Town trees, but instead to

---

[8] The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Lowinger* 50 F.3d at 65. The doctrine anticipates and accommodates "reasonable error ... because officials should not err always on the side of caution" for fear of being sued. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

abate what was an increasingly disruptive situation created by Mr. Hersey's conduct toward

Transfer Station employees.

## Conclusion

For the foregoing reasons, the Defendant respectfully requests that this Honorable Court

Grant this Motion for Judgment on the Pleadings, Ordering the Dismissal of all Counts of the

Plaintiff's Complaint against him, with prejudice and costs, and such other relief this Court

deems just and proper.

Respectfully submitted,

Defendant,
JOSEPH STIGLIANI,
By his Attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

/s/ Seth B. Barnett
_____
John J. Davis, BBO #115890
Seth B. Barnett, BBO #661497
90 Canal Street
Boston, MA 02114
(617) 350-0950

Dated: January 21, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on January 21, 2010.

/s/ Seth B. Barnett

_____

Seth B. Barnett